```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

DONALD W. SMITH                                 CIVIL ACTION

VERSUS                                          NUMBER: 12-0400

MICHAEL J. ASTRUE,                              SECTION: "N"(5)
COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION
```

**REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2(B), this matter comes before the Court on the parties' cross-motions for summary judgment following a decision of the Commissioner of the Social Security Administration ("SSA") denying plaintiff's applications for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") benefits based upon disability. (Rec. docs. 17, 18).

Donald W. Smith, plaintiff herein, filed the subject applications for DIB and SSI benefits on April 19, 2007, with a protective filing date of April 17, 2007, alleging disability as of August 10, 2006. (Tr. pp. 197-201, 202-204, 207, 211). In a Disability Report that appears in the record, the conditions resulting in plaintiff's inability to work were identified as neck, shoulder, eye, head, and stomach problems. (Tr. pp. 210-217).

Plaintiff's applications were denied at the initial step of the Commissioner's administrative review process of June 18, 2007. (Tr. pp. 100-103). On August 6, 2007, plaintiff sought review of that initial denial by requesting a hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. pp. 104-108). On August 9, 2007, the SSA acknowledged receipt of plaintiff's request for a hearing, advising him, inter alia, that he "...may ask the ALJ to issue a subpoena that requires a person to submit documents or testify at your hearing." (Tr. pp. 109-113). Plaintiff was subsequently provided with formal notice that the hearing would go forward on June 9, 2008 which contained further detailed instructions under a section of the notice designated "Your Right To Request a Subpoena". (Tr. pp. 117-125). Plaintiff appeared for the hearing on June 9, 2008 but the matter was continued to August 11, 2008 as plaintiff was without counsel. (Tr. pp. 79-85, 96).

On July 22, 2008, plaintiff was issued a second "NOTICE OF HEARING" formally advising him of his new hearing date. (Tr. pp. 86-94). That notice again informed plaintiff of his right to request a subpoena in connection with the upcoming rescheduled proceeding. (Tr. p. 89). Plaintiff appeared before the ALJ again on August 11, 2008 and once again the matter was continued because plaintiff was unattended by counsel. (Tr. pp. 79-85). In the interim, plaintiff was to submit to a consultative evaluation and medical records from some of his healthcare providers were to be

obtained. (Id.). Plaintiff underwent the consultative evaluation on September 27, 2008. (Tr. pp. 378-390). By letter dated October 27, 2008, the ALJ advised plaintiff of his intention to enter the report of the consultative evaluation into the record as new evidence. (Tr. pp. 245-246). In addition, the letter advised plaintiff of his various options in connection with that new evidence, including his right to request a supplemental hearing at which he could question witnesses, including the consultative evaluator, and to request subpoenas to compel the attendance of any such witnesses. (Id.).

On November 21, 2008, plaintiff was sent a third "NOTICE OF HEARING" advising him of a new hearing date of January 13, 2009. (Tr. pp. 135-142). Like the first two notices, this third one again advised plaintiff of his right to request a subpoena for the upcoming proceeding. (Tr. p. 138). Upon written request by plaintiff's attorney, the hearing was continued yet again. (Tr. p. 51). On April 14, 2009, plaintiff was issued a fourth notice advising him that the hearing had been rescheduled for May 12, 2009. (Tr. pp. 148-159). Once again, the notice reminded plaintiff of his right to request a subpoena for purposes of the hearing. (Tr. p. 150). For reasons that are not apparent from the record, the hearing scheduled for May 12, 2009 was continued. (Tr. p. 20).

On June 16, 2009, plaintiff was consultatively evaluated by

Dr. John P. Sweeney, an orthopaedic surgeon. (Tr. pp. 491-499). After receiving the report documenting that evaluation, on June 22, 2009 the ALJ sent plaintiff's counsel a letter advising of his intention to enter the report into the record as evidence. (Tr. pp. 256-257). Once again, plaintiff was advised of his options in connection with the proposed admission of that new evidence, including his right to submit written questions to the consultative evaluator and his right to request a supplemental hearing and to request the issuance of subpoenas to compel the attendance of witnesses, including the consultative evaluator, for questioning. (Id.).

On July 7, 2009, plaintiff underwent a consultative psychological evaluation by Dr. Scuddy Fontenelle. (Tr. pp. 501-508). After receiving the report of that evaluation, on July 23, 2009 the ALJ sent plaintiff's counsel a letter advising of his intention to enter the report into the record. (Tr. pp. 259-260). Just like those following plaintiff's first two consultative evaluations, the letter further advised plaintiff of the courses of action he could take vis-a-vis the report, including his right to submit written questions (i.e., interrogatories) to the evaluator. (Id.). Additional options were as follows:

> [y]ou may also request a supplemental hearing at which you would have the opportunity to appear, testify, produce witnesses, and submit additional evidence and written or oral statements concerning the facts and law. If you request a supplemental hearing, I will grant the request unless I receive additional records that support

> a fully favorable decision. <u>In addition, you may request an opportunity to question witnesses, including the author(s) of the enclosed report(s)</u>. I will grant a request to question a witness if I determine that questioning the witness is needed to inquire fully into the issues. If an individual declines a request by me to appear voluntarily for questioning, I will consider whether to issue a subpoena to require his or her appearance.
>
> You may request that I issue a subpoena to require the attendance of witnesses or the submission of records. You must submit a subpoena request, in writing, no later than 5 days before the date of any supplemental hearing. Any request that I issue a subpoena must provide the names of the witnesses or documents to be provided; the address or location of the witnesses or documents with sufficient detail to find them; a statement of the important facts that the witness or document is expected to prove; and the reason why these facts cannot be proven without issuing a subpoena. I will issue a subpoena if reasonably necessary for the full presentation of the case.
>
> \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
>
> <u>If I do not receive a response from you within 10 days of the date you receive this notice, I will assume that you do not wish to submit any written statements or records and that you do not wish to request a supplemental hearing or to orally question the author(s) of the enclosed report(s). I will then enter the enclosed evidence in the record and issue my decision.</u>
>
>             (<u>Id</u>.)(emphasis added).

No response to the ALJ's missive was forthcoming from plaintiff within the ten-day period noted in the last paragraph of the notice. Instead, on October 1, 2009, some two and one-half months later, plaintiff's counsel belatedly objected to the IQ assessment set forth in Dr. Fontenelle's report, stating that he intended to separately submit interrogatories to Dr. Fontenelle.

(Tr. pp. 262-264).  Counsel forwarded the proposed interrogatories to the ALJ on October 9, 2009, hoping that the answers thereto would obviate the need for a supplemental hearing but "...reserv[ing] the right to any other options available."  (Tr. pp. 265-267).  If the doctor failed to answer the interrogatories, plaintiff objected to the inclusions of Dr. Fontenelle's report in the record and requested that plaintiff be re-tested by another psychologist.  (Id.).

On January 15, 2010, the ALJ sent plaintiff a fifth "NOTICE OF HEARING" advising him of a new hearing date of February 9, 2010. (Tr. pp. 163-176).  That notice once again advised plaintiff of his right to request a subpoena to compel the attendance of any needed witnesses at the impending hearing.  (Id.).  Attended by counsel, plaintiff appeared for the hearing before the ALJ on February 9, 2010.  (Tr. pp. 49-78).  When asked whether he had any objection to the introduction of the exhibits into evidence, including Dr. Fontenelle's report, counsel initially referenced his correspondence to the ALJ of October 1 and 9, 2009 and his proposed interrogatories to the doctor but ultimately stated "I have no objections."  (Tr. pp. 51-52).  The exhibits were then formally admitted into evidence, following which the ALJ invited plaintiff's counsel to propound the interrogatories upon Dr. Fontenelle directly, reserving to plaintiff the right to object to the weight of the doctor's report if he failed to answer the interrogatories.

(Tr. pp. 52-53).  Although the Vocational Expert ("VE") who was scheduled to testify at the hearing failed to appear, plaintiff was sworn and testified concerning his alleged disability with questions to be posed to the VE at a later date in light of plaintiff's testimony.  (Tr. pp. 54-78).

Plaintiff submitted his interrogatories directly to Dr. Fontenelle by letter dated February 25, 2010.  (Tr. p. 270).  On April 15, 2020, plaintiff was sent a "NOTICE OF CONTINUED HEARING" advising him that the supplemental hearing would be resumed on May 11, 2010 at which a VE would be called to testify.  (Tr. pp. 179-193).  Dr. Fontenelle apparently failed to respond to plaintiff's interrogatories and the record contains no evidence that plaintiff sought a subpoena to compel the doctor's presence at the hearing.  At the continued hearing, plaintiff's counsel reported the doctor's lack of a response to the interrogatories.  (Tr. p. 46).  The VE was duly questioned by both the ALJ and plaintiff's counsel.  (Tr. pp. 38-44).  No further objection to Dr. Fontenelle's report was made nor was another supplemental hearing or a subpoena to the doctor sought.  (Tr. pp. 35-48).

On June 21, 2010, the ALJ issued his written decision in which he concluded that plaintiff was not disabled within the meaning of the Social Security Act, relying in part upon Dr. Fontenelle's report.  (Tr. pp. 17-34).  Plaintiff then requested review of the ALJ's adverse decision by the Appeals Counsel ("AC").  (Tr. pp. 15-

16).  In correspondence to the AC dated November 15, 2011, plaintiff's counsel reiterated his earlier argument that he had a right to have his interrogatories answered by Dr. Fontenelle, further providing the AC with a letter from another psychologist, Dr. Mary. T. Munger, in which he questioned the testing methodology that had been utilized by Dr. Fontenelle.  (Tr. pp. 272-273, 601-602).  The AC subsequently denied plaintiff's request for review of the ALJ's decision on December 5, 2011, thus making the ALJ's decision the final decision of the Commissioner.  (Tr. pp. 7-11). It is from that unfavorable decision that the plaintiff seeks judicial review pursuant to 42 U.S.C. §§405(g) and 1383(c)(3).

In his cross-motion for summary judgment, plaintiff does not directly challenge the ALJ's substantive finding of June 21, 2010 that he was not disabled within the meaning of the Social Security Act.  Instead, he frames the issue for judicial review in more procedural terms, as follows:

> 1.  [t]he ALJ sent plaintiff to a post-hearing psychological consultative examination (CE) and approved submission of interrogatories to the CE.  Plaintiff objected to the report, propounded interrogatories to the CE regarding the validity of the testing methodology and reserved his rights to a supplemental hearing wherein he could cross-examine the CE.  No response was received from the CE, and the ALJ, without further notice, issued a decision based upon the findings of the CE.  Was plaintiff improperly denied his right to cross-examine the CE?
>
> (Rec. doc. 17-2, p. 1).

"'Due process requires that a claimant be given the

opportunity to cross-examine and subpoena the individuals who submit reports.'" Lidy v. Sullivan, 911 F.2d 1075, 1077 (5th Cir. 1990), cert. denied, 500 U.S. 959, 111 S.Ct. 2274 (1991)(quoting Coffin v. Sullivan, 895 F.2d 1206, 1212 (8th Cir. 1990)). It is the opportunity for cross-examination which is the element of fundamental fairness to which a claimant is entitled. Lidy, 911 F.2d at 1077 (quoting Wallace v. Bowen, 869 F.2d 187, 192 (3rd Cir. 1989)). To that end and to facilitate the claimant in satisfying his ultimate burden in proving up his disability, Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988), Social Security Regulations provide that:

> [y]ou may request that we assist you in obtaining pertinent evidence for your disability hearing and, if necessary, that we issue a subpoena to compel the production of certain evidence or testimony. We will follow subpoena procedures similar to those described in §404.950(d) [and §416.1416(d)] for the administrative law judge hearing process;...
>
>          20 C.F.R. §§404.916(b)(1), 416.1416(b)(1).

In turn, Sections 404.950(d) and 416.1450(d) provide as follows:

> *Subpoenas.* (1) When it is reasonably necessary for the full presentation of a case, an administrative law judge or a member of the Appeals Council may, on his or her own initiative or at the request of a party, issue subpoenas for the appearance and testimony of witnesses and for the production of books, records, correspondence, papers, or other documents that are material to an issue at the hearing.
>  (2) Parties to a hearing who wish to subpoena documents or witnesses must file a written request for the issuance of a subpoena with the administrative law

>    judge or at one of our offices at least 5 days before the
>    hearing date.  The written request must give the names of
>    the witnesses or documents to be produced; describe the
>    address or location of the witnesses or documents with
>    sufficient detail to find them; state the important facts
>    that the witness or document is expected to prove; and
>    indicate why these facts could not be proven without
>    issuing a subpoena.
>         (3) We will pay the cost of issuing the subpoena.
>         (4) We will pay subpoenaed witnesses the same fees
>    and mileage they would receive if they had been
>    subpoenaed by a Federal district court.

The above regulatory protections notwithstanding, the right to due process is not infringed when a claimant is provided the opportunity to request cross-examination but fails to do so. Hollis v. Mathews, 520 F.2d 338, 340 (5th Cir. 1975).  A claimant who complains that he was unable to cross-examine physicians who prepared medical reports that were admitted into evidence but who did not take advantage of the opportunity afforded to him to request that subpoenas be issued for the physicians to testify at a hearing is precluded from complaining that he was denied his due process rights.  Richardson v. Perales, 402 U.S. 389, 404-05, 91 S.Ct. 1420, 1429 (1971).

Measured against these standards, the Court is unable to conclude that plaintiff was improperly denied the right to cross-examine Dr. Fontenelle.  A review of the administrative record reveals that on no less than eight occasions, plaintiff was duly advised of his right to subpoena witnesses to secure their presence at hearings that were scheduled in his case.  (Tr. pp. 109-113, 117-125, 86-94, 245-246, 135-142, 148-159, 256-257, 259-260).  The

first of those was subsequent to the denial of plaintiff's benefits applications at the initial level and in response to his request for a hearing <u>de novo</u> before an ALJ. (Tr. pp. 109-113).  On three of those occasions, which came in the wake of the ALJ's receipt of reports from consultative evaluators, plaintiff was advised of various options that were available to him to challenge those reports which specifically included the right to subpoena and question the evaluators. (Tr. pp. 245-246, 256-257, 259-260). The first two of those preceded the ALJ's receipt of Dr. Fontenelle's report. (Tr. pp. 245-246, 256-257).  On each of those occasions, plaintiff failed to notify the ALJ of his desire to cross-examine the doctor within the ten-day period set forth in the notices.

Instead, plaintiff chose to belatedly propound interrogatories to Dr. Fontenelle which he himself drafted, unlike the situation in <u>Tanner v. Sec. of Health and Human Services</u>, 932 F.2d 1110 (5th Cir. 1991) where the interrogatories were prepared by the ALJ and the plaintiff's request that the interrogatories be rephrased went unanswered.  In finding that the plaintiff in that case had not waived his right to cross-examine the author of the particular report, the Fifth Circuit distinguished the facts before it from those that were presented in <u>Coffin v. Sullivan</u>, 895 F.2d 1206 (8th Cir. 1990) where the claimant had twice been apprised of his rights but had failed to respond to the ALJ's letters.  <u>Tanner</u>, 932 F.2d at 1113.  Here, by contrast, plaintiff was advised of his

11

compulsory process rights on no less than eight occasions.

In the present case, plaintiff elected to propound his own interrogatories upon Dr. Fontenelle and the ALJ did not stand in the way of that process. The Court is cited no authority by which answers to such interrogatories can be compelled nor does it appear that plaintiff ever made such a request. At the hearing that was held on February 9, 2010, plaintiff had no objection to the admission of Dr. Fontenelle's report. The Court is also not cited with any authority which specifically holds that a claimant's right to cross-examination extends to the right to have his interrogatories answered. In light of plaintiff's inaction in failing to avail himself of the subpoena opportunity of which he was repeatedly informed on numerous occasions, the Court is constrained to conclude that he is now precluded from complaining that he was denied the right of confrontation and cross-examination. Perales, 402 U.S. at 404-05, 91 S.Ct. at 1429; Hollis, 520 F.2d at 340.

### RECOMMENDATION

For the foregoing reasons, it is recommended that plaintiff's motion for summary judgment be denied and that defendant's motion for summary judgment be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within fourteen days after being

served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Services Auto. Assoc.</u>, 79 F.3d 1415 (5th Cir. 1996)(<u>en banc</u>).

    New Orleans, Louisiana, this  5th  day of ___March___, 2013.

                                                ALMA L. CHASEZ
                        UNITED STATES MAGISTRATE JUDGE